**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GF INDUSTRIES OF MISSOURI, LLC,** : <br> 20 Lawrence Drive : <br> St. Louis, MO 63141, : <br> : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **LEHIGH VALLEY GENOMICS, LLC,** : <br> 2550 Broadhead Rd, Suite 202 : <br> Bethlehem, PA 18020, : <br> : <br> Defendant. : | <br><br><br><br><br><br><br><br>**Civil Action No. _____**<br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff GF Industries of Missouri, LLC ("GFIM"), by and through its undersigned attorney, say the following by way of complaint against defendant Lehigh Valley Genomics, LLC ("LVG").

**THE PARTIES, JURISDICTION AND VENUE**

1. GFIM is a limited liability company organized under the laws of the State of Missouri having its principal place of business at 20 Lawrence Drive, St. Louis, Missouri 63141, with Lee Binion as its sole member.

2. Upon information and belief, LVG is a limited liability company organized under the laws of the Commonwealth of Pennsylvania having its principal place of business at 2550 Broadhead Rd, Suite 202, Bethlehem, Pennsylvania 18020, with no members domiciled in Missouri.

3. The Court has jurisdiction over GFIM'S 42 U.S.C. § 1981 claim pursuant to 28 U.S.C. § 1331.

4. The Court has jurisdiction over GFIM's state law claims pursuant to 28 U.S.C.

§ 1332 because the case involves parties from different states and the amount in controversy exceeds $75,000, as well as pursuant to 28 U.S.C. § 1367 because the state law claims arise from the same nucleus of operative facts as does GFIM's federal cause of action so as to form part of the same case or controversy within the meaning of the United States Constitution.

5. Venue is appropriate in this Court because defendant is found in this district and a significant portion of the acts, omissions and transactions giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

6. GFIM is in the business of, *inter alia*, providing programs to market the services of various health care service providers, including but not limited to those providing genetic and molecular laboratory testing.

7. LVG holds itself out as being in the business of providing a comprehensive assortment of diagnostic laboratory tests to physician partners.

8. On or about May 1, 2021, GFIM and LVG entered into a Development and Marketing Services Agreement (the "Agreement").

9. Pursuant to the Agreement, GFIM provided business development services ("Services") to LVG.

10. The Agreement, at paragraph 4(a), entitled GFIM to $100,000 each month during the first three months of the initial term of the Agreement, which was one year.

11. Paragraph 4(b) provides that the parties would consider modification of this initially stated compensation based upon GFIM's performance.

12. Subsequent to entering into the Agreement, LVG's Lisa Jackson, whom the Agreement designated as the person to receive notices on LVG's behalf pursuant to the

Agreement, and Karen Avery, LVG's director of billing, promised GFIM's principal, Lee Binion, that LVG would pay GFIM a bonus in addition to the $100,000 monthly payment if GFIM brought in accounts in excess of 75 each month for LVG.

13. For the first three months after entering into the Agreement, in reliance on these promises, GFIM significantly exceeded the parties' business development targets. As of June, 2021, Ms. Avery calculated the bonus due to GFIM at $325,000. GFIM also exceeded its targets in subsequent months.

14. In total, GFIM earned $444,000 in bonuses. Despite these promises, IVG to date paid GFIM only $100,000 of the bonuses GFIM earned.

15. In addition to failing to pay GFIM the agreed upon bonuses, beginning in or about August, 2021, LVG, by and through Ms. Jackson, began sabotaging GFIM's efforts pursuant to the Agreement by refusing to provide supplies for tests, refusing to provide test and lab results and other support to the providers that GFIM had brought to LVG, and making false and disparaging statements about Mr. Binion and GFIM to these providers.

16. Ms. Jackson LVG's corporate counsel, Robert Dunn, also engaged in a pattern of harassment toward Mr. Binion by being verbally abusive toward Mr. Binion on telephone calls, instructing other LVG personnel not to assist Mr. Binion and threatening them with termination if they did so, and demanding to be copied on all communications involving Mr. Binion for no legitimate business purpose.

17. Mr. Dunn also withheld Mr. Binion's final bi-monthly base payment of $50,000 until Mr. Binion provided treatment notes, something that the Agreement did not require Mr. Binion to provide.

18. Mr. Dunn and Ms. Jackson made a number of comments that demonstrate that LVG's pattern of harassment, refusal to pay GFIM the agreed upon bonuses, and ultimate termination of GFIM were all motivated by racial animus. After learning that Mr. Binion is

African American, Ms. Jackson told Dr. Jasen Chi, a physician in Little Rock, Arkansas who was considering contracting with LVG, that LVG would not pay GFIM the bonuses LVG had promised GFIM because people of Mr. Binion's color "didn't make that kind of money."  Ms. Jackson also made disparaging comments to Dr. Chi regarding Sylvester Williams, another service provider, who is African American, to the effect that he was a "dumb black guy" and had no business running a laboratory operation.  In a conversation with Mr. Binion, Ms. Jackson told Mr. Binion that "you speak pretty well. I am surprised."

19. Shortly before LVG terminated its contract with LVG, Mr. Dunn told another contractor, Jason Bennett, who is Caucasian and was performing similar services to GFIM that LVG "needed more people like [him] and less people like" Mr. Binion.

20. In addition, at the same time, GFIM was outperforming another contractor, who is Caucasian. LVG paid more compensation to this contractor than GFIM despite the fact that GFIM outperformed this contractor.  Moreover, LVG purported to require GFIM to perform extra-contractual customer service tasks that LVG did not require of its other contractors.

21. LVG terminated the Agreement effective as of November 1, 2021.  At the time of the termination LVG's representative claimed that the termination was for unspecified "business needs" and that LVG would no longer pay a business development representative $100,000 a month or more.  Mr. Binion later learned that shortly after this statement, LVG retained another business development representative, who is Caucasian and whom LFIG outperformed during the term of the Agreement, at $160,000 per month.

22. If LVG had allowed GFIM to perform its services under the Agreement unhindered, GFIM would have earned compensation during the last six months of the Agreement's initial term equal to or greater than the compensation GFIM earned during the initial six months, and likely into successive renewal terms.  LVG's racially motivated termination of GFIM deprived GFIM of the opportunity to earn this income.  In so doing, LVG

violated GFIM's and Mr. Binion's entitlement to equal rights under the law within the meaning of 42 U.S.C. § 1981.

23. In light of the foregoing, LVG owes GFIM no less than $1,388,000.

## COUNT ONE

### GFIM V. LVG – BREACH OF CONTRACT

24. GFIM incorporates the allegations of paragraphs 1 through 23 by reference as though set forth fully herein.

25. The Agreement is a binding and enforceable contract between the parties.

26. By LVG's acts and omissions described above, LVG materially breached the Agreement.

27. As a consequence of LVG's material breach of the Agreement, GFIM has suffered damages.

28. The Agreement provides that the prevailing party in any litigation arising under the Agreement is entitled to recover reasonable attorneys' fees.

WHEREFORE, for the foregoing reasons, plaintiff GF Industries of Missouri, LLC demands judgment in its favor and against defendant Lehigh Valley Genomics, LLC, together with attorneys' fees, interest, costs of suit and such other and further relief as the Court may deem just.

## COUNT TWO

### GFIM V. LVG – UNJUST ENRICHMENT

29. GFIM incorporates the allegations of paragraphs 1 through 28 by reference as though set forth fully herein.

30. In the alternative to the allegations set forth in Count One, as a consequence of GFIM's efforts on LVG's behalf as described above, GFIM conferred a benefit upon LVG.

31. Under the circumstances, it would be unjust for LVG to retain the benefit GFIM confirmed upon LVG without compensating GFIM for providing this benefit.

WHEREFORE, for the foregoing reasons, plaintiff GF Industries of Missouri, LLC demands judgment in its favor and against defendant Lehigh Valley Genomics, LLC for compensatory damages in an amount to be proven at trial, together with interest, costs of suit and such other and further relief as the Court may deem just.

## COUNT THREE

## GFIM V. LVG – VIOLATION OF 42 U.S.C. § 1981

32. GFIM incorporates the allegations of paragraphs 1 through 32 by reference as though set forth fully herein.

33. GFIM is wholly minority owned, a fact which was known to LVG at the time of the events complained of.

34. Mr. Binion was the principal GFIM representative providing services to LVG during the time period in question, and the fact that Mr. Binion is African America was known to LVG at the time of the events complained of.

35. GFIM therefore had acquired an imputed minority racial identity as African American to LVG at the time of the events complained.

36. In refusing to compensate GFIM the agreed upon bonus, and in terminating the Agreement, LVG intended to discriminate against GFIM on the basis of race.

37. In so doing, LVG discriminated against GFIM in violation of GFIM's rights to shall have the same right ... to make and enforce contracts... as is enjoyed by white citizens, including includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," within the meaning of 42 U.S.C. § 1981.

38. As a result of LVG's discriminatory conduct directed toward GFIM, GFIM

suffered damages.

39. LVG's conduct was willful, outrageous, and of the sort warranting the imposition of punitive damages.

WHEREFORE, for the foregoing reasons, plaintiff GF Industries of Missouri, LLC demands judgment in its favor and against defendant Lehigh Valley Genomics, LLC for compensatory damages in an amount to be proven at trial, together with punitive damages, attorneys' fees, interest, costs of suit and such other and further relief as the Court may deem just.

Dated: January 18, 2022                             Respectfully submitted,

_____

Francis X. Taney, Jr.
(PA ID No. 76590)
Taney Legal LLC
1933 Prospect Ridge Boulevard
Haddon Heights, NJ 08035
Telephone: (215) 514-8736
Facsimile: (856) 494-1364
Email: frank.taney@taneylegal.com

Attorney for plaintiff