## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

– – – – – – – – – – – – – – – – – – – – – – – – – – –

| | | |
|---|---|---|
| GF INDUSTRIES OF MISSOURI, LLC, | : | Case No.: 5:22-cv-227-JFL |
| Plaintiff, | : | |
| v. | : | |
| LEHIGH VALLEY GENOMICS, LLC, | : | ORAL ARGUMENT REQUESTED |
| Defendant. | : | |

– – – – – – – – – – – – – – – – – – – – – – – – – – –

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant Lehigh Valley Genomics, LLC hereby moves this Honorable Court for an Order granting summary judgment in its favor and against Plaintiff GF Industries of Missouri, LLC respecting the claims brought by GF Industries of Missouri, LLC through its Complaint (Dkt. No.1). In support of this motion, the Defendant incorporates by reference and relies upon the Memorandum of Law filed contemporaneously herewith.

Respectfully submitted,

*/s/ Robert J. McCully,*
Robert J. McCully, *admitted pro hac vice*
Shareda P. Coleman, Bar No. 325623
Two Commerce Square
2001 Market St, Suite 3000
Philadelphia, PA 19103
215-278-2555
rmccully@shb.com
scoleman@shb.com

Dated:  August 22, 2022

*Attorneys for Defendant Lehigh Valley Genomics, LLC*

i

## **TABLE OF CONTENTS**

I.      **Statement of Facts** ...................................................................................**3**

II.     **Statement of the Questions Involved** .......................................................**3**

      A.    Whether LVG breached the May 1, 2021 Development and Marketing Services Agreement ("Agreement") in terminating the Agreement on November 19, 2021; or in not providing bonus payments to Plaintiff (Count One)? ..............................................................................................3

      B.    Whether LVG was unjustly enriched by receiving a benefit from GFIM without compensating GFIM for that benefit (Count Two)? ........................3

      C.    Whether LVG violated 42 U.S.C. §1981, either in terminating the May 1, 2021 Agreement, or in not making bonus payments to GFIM (Count Three)? ...............................................................................................4

III.   **Summary of the Argument** ......................................................................**4**

IV.   **Argument** ..................................................................................................**4**

      A.    Summary Judgment Standard .....................................................................4

      B.    The Parties' May 1, 2021 Agreement Expressly and Exclusively Controls the Legal Relationship Between LVG and GFIM.  LVG Acted Within that Relationship in its Compensation and Termination Decisions. ...................5

      C.    Plaintiff's Unjust Enrichment Claim Fails Because Any Benefits Conferred Upon LVG Were Required by the Parties' Contract and Were Compensated For Based on the Terms of the Contract. ...........................10

      D.    LVG's Contract Decisions Regarding GFIM Were Not Racially Motivated.  Accordingly, LVG Did Not Violate 42 U.S.C. § 1981 .........11

         i.   Plaintiff Cannot Establish a Prima Facie Case of Discrimination .......12

         ii.  Even if Plaintiff Could Establish a Prima Facie Case, Its Claim Still Fails Under the McDonald Douglass Framework ...............................20

         iii. Plaintiff Cannot Show LVG's Proffered Reasons Were Pretextual ....21

V.     **Conclusion** .............................................................................................**22**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ade v. KidsPeace Corp.*,
    698 F. Supp. 2d 501 (E.D. Pa.), *aff'd*, 401 F. App'x 697 (3d Cir. 2010) ...................12, 19, 22

*ATACS Corp. v. Trans World Commc'ns, Inc.*,
    155 F.3d 659 (3d Cir. 1998)....................................................................................................6

*Boat People S.O.S., Inc. v. Urb. Affs. Coal*,
    No. CV 16-5486, 2018 WL 558432 (E.D. Pa. Jan. 25, 2018) ..................................................8

*Brandow Chrysler Jeep Co. v. DataScan Techs.*,
    346 F. App'x 843 (3d Cir. 2009) .............................................................................................6

*Cameron-Satchell v. CDHA Mgmt. LLC*,
    No. CV 21-576, 2021 WL 4902342 (E.D. Pa. Oct. 21, 2021)....................................14, 16, 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................................5

*Cipolla v. Inst. for Psychoanalytic Psychotherapies*,
    33 F. App'x 617 (3d Cir. 2002) ..............................................................................................7

*DeCicco v. Mid-Atl. Healthcare, LLC*,
    275 F. Supp. 3d 546, 555-56 (E.D. Pa. 2017)........................................................................20

*Dominici v. Reading Hosp./Tower Health*,
    No. 5:18-CV-04181, 2020 WL 2898658 (E.D. Pa. June 3, 2020)...............................11, 20, 22

*Downey v. First Indem. Ins.*,
    214 F. Supp. 3d 414, 430 (E.D. Pa. 2016) .......................................................................10, 11

*Ellis v. Budget Maint., Inc.*,
    25 F. Supp. 3d 749, 753 (E.D. Pa. 2014) ..............................................................................11

*Harris v. Keystone Cement Co.*,
    No. 5:19-CV-01965, 2021 WL 672416 (E.D. Pa. Feb. 22, 2021) .................................. *passim*

*In re Trib. Media Co.*,
    902 F.3d 384 (3d Cir. 2018)..................................................................................................14

*Jackson v. SE. Pennsylvania Transportation Auth.*,
    No. 19-CV-0760-JMY, 2021 WL 3471163 (E.D. Pa. Aug. 6, 2021) ........................................5

*Kaucher v. County of Bucks*,
    455 F.3d 418 (3d Cir. 2006)........................................................................................4

*Keller v. Orix Credit Alliance, Inc.*,
    130 F.3d 1101 (3d Cir.1997)....................................................................................19

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).................................................................................................12

*MDNet, Inc. v. Pharmacia Corp.*,
    147 F. App'x 239 (3d Cir. 2005) ...........................................................................7, 9

*Ortiz v. Cedar Crest Coll.*,
    No. 5:16-CV-06703, 2017 WL 6422164 (E.D. Pa. Dec. 18, 2017), *aff'd*, 764
    F. App'x 257 (3d Cir. 2019) ...................................................................................12

*Peake v. Pennsylvania State Police*,
    644 F. App'x 148 (3d Cir. 2016) .............................................................................16

*Roberts v. Planned Bldg. Servs.*,
    No. CIV. 08-0968, 2009 WL 367542 (E.D. Pa. Feb. 13, 2009) ............................18

*Smith v. City of Allentown*,
    589 F.3d 684 (3d Cir. 2009).....................................................................................5

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    533 F.3d 162 (3d Cir. 2008)....................................................................................10

*Vino 100, LLC v. Smoke on the Water, LLC*,
    864 F. Supp. 2d 269 (E.D. Pa. 2012) .......................................................................7

*Wilson v Blockbuster, Inc*,
    571 F. Supp. 2d 641 (E.D. Pa. 2008) ......................................................................18

## Statutes

42 U.S.C. §1981 ................................................................................................. *passim*

Civil Rights Act of 1964 Title VII......................................................................11, 12

## Rules

Federal Rules of Civil Procedure 56 ...............................................................................4

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

GF INDUSTRIES OF MISSOURI, LLC,         :            Case No.: 5:22-cv-227-JFL

                            Plaintiff,      :

                            v.         :

LEHIGH VALLEY GENOMICS, LLC,        :

                           Defendant.    :

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

      Defendant Lehigh Valley Genomics, LLC, by and through its undersigned counsel, hereby

files this Memorandum of Law in support of its Motion for Summary Judgment.

**I.**      **Statement of Facts**

      Pursuant to the Policies and Procedures of this Honorable Court, Defendant Lehigh Valley

Genomics, LLC ("LVG") has filed a separate Statement of Undisputed Material Facts ("SUMF"),

which LVG incorporates by reference as if fully set forth herein.

**II.**      **Statement of the Questions Involved**

    **A.**  Whether LVG breached the May 1, 2021 Development and Marketing Services
        Agreement ("Agreement") in terminating the Agreement on November 19, 2021; or
        in not providing bonus payments to Plaintiff (Count One)?
          i.  Suggested Answer: No

    **B.**  Whether LVG was unjustly enriched by receiving a benefit from GFIM without
        compensating GFIM for that benefit (Count Two)?
          i.  Suggested Answer: No

**C.** Whether LVG violated 42 U.S.C. §1981, either in terminating the May 1, 2021 Agreement, or in not making bonus payments to GFIM (Count Three)?
   i.   Suggested Answer: No

## III.   Summary of the Argument

Plaintiff GF Industries of Missouri, LLC ("GFIM") brings this action against LVG asserting claims for breach of contract (Count One), unjust enrichment (Count Two), and a violation of 42 U.S.C. § 1981 (Count Three). GFIM, a disgruntled former contractor of LVG, seeks to circumvent the express terms of the written contract between the parties by seeking damages for alleged unpaid bonuses and wrongful termination. Plaintiff bases its bonus claims on the alleged oral promises of another LVG employee, a non-signatory to the parties' contract, who had no contract or decision-making authority for LVG.  Plaintiff further contends that LVG discriminated against it by refusing to honor this supposed oral promise for bonuses and by terminating his at-will contract.  LVG is entitled to judgment as a matter of law on Counts One and Two based on the unambiguous and undisputed terms of the parties' contract. Moreover, Plaintiff's §1981  claim (Count Three) also fails because Plaintiff cannot demonstrate that LVG's legitimate, nondiscriminatory reasons for its decisions not to pay unauthorized bonuses and to terminate an at-will contract were a pretext for discrimination.

## IV.   Argument

### A.  Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006).

Summary judgment will not be defeated by a non-movant's conclusory allegations or subjective beliefs. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Moreover, "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). The non-moving party must "by affidavits or by the depositions and admissions on file, make a showing sufficient to establish the existence of [every] element essential to that party's case." *Jackson v. SE. Pennsylvania Transportation Auth.*, No. 19-CV-0760-JMY, 2021 WL 3471163, at *3 (E.D. Pa. Aug. 6, 2021) (internal quotation marks omitted).

### B. The Parties' May 1, 2021 Agreement Expressly and Exclusively Controls the Legal Relationship Between LVG and GFIM.  LVG Acted Within that Relationship in its Compensation and Termination Decisions.

On May 1, 2021, LVG and GFIM entered into a Development and Marketing Services Agreement ("Agreement"), SUMF ¶28.  The signatories to the Agreement were Ms. Lisa Jackson, LVG's co-owner and managing partner, SUMF ¶ 2; and Mr. Lee Binion, GFIM's owner, SUMF ¶ 6.  The 13-page Agreement expressly set forth the exact amount of compensation that GFIM would receive under the Agreement, specifically $100,000.00 per month for up to a 12-month period of time, in exchange for GFIM's performance of services under the Agreement.  SUMF ¶ 30.  The Agreement made no provision for the payment of any compensation beyond this fixed monthly rate.  SUMF ¶ 36.  The Agreement further included an unambiguous integration clause and an unambiguous no oral modifications clause:

> 15.    Entire Agreement. This Agreement supersedes any and all prior agreements, either oral or written, between the parties with respect to the subject matter of this Agreement (including any term sheet or similar agreement or document relating to the transactions contemplated hereby). This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and no party shall be entitled to benefits other than those specified herein.
> …

> 20.     Amendment. This Agreement may be modified or amended only by a written instrument duly executed by each of the parties hereto.

SUMF ¶¶ 33-34.  Finally, the Agreement included a provision allowing either party the right to terminate the Agreement at any time and for any reason upon the providing of 15 days notice:

> 7(f).   Notwithstanding the foregoing, either party may terminate this Agreement for any reason by providing 15 days' advance written notice.

SUMF ¶ 34. LVG fully complied with the terms of its Agreement with GFIM.  From May 1, 2021, to November 15, 2021, LVG paid GFIM $50,000 every other week, totaling $650,000 in compensation, as set forth expressly in the Amendment.  On November 4, 2021, pursuant to paragraph 7(f) of the Agreement, LVG provided a 15-day notice of termination to Plaintiff, with an effective date of November 19, 2021.  SUFM ¶¶ 68-69.  GFIM now claims that LVG breached the Agreement because it terminated the Agreement before the expiration of 12 months, and because LVG failed to make bonus payments over and above the $100,000.00 monthly compensation amount.  Basic principles of contract law state "the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 665 (3d Cir. 1998). Absent ambiguity, the court should not look beyond the writing to determine the parties' intention. *Brandow Chrysler Jeep Co. v. DataScan Techs.*, 346 F. App'x 843, 846 (3d Cir. 2009). And indeed, Plaintiff has made no claim here that the May 1, 2021 Agreement, as agreed to and executed, was not sufficiently definite or that the terms were in any way ambiguous.

Plaintiff's only contention with respect to the terms of the Agreement is that the terms were modified, within a matter of days of execution of the Agreement, to provide for payments to GFIM over and above the $100,000.00 monthly compensation it contracted for.  Before addressing the

insufficiencies of GFIM's assertions that terms regarding compensation were modified, it must be noted that Plaintiff makes no assertion that paragraph 7(f) was in any way modified by the parties. Paragraph 7(f) is sufficiently definite and unambiguous regarding either party's right to terminate the Agreement at any time and for any reason ahead of the 12-month time period of the Agreement, and Plaintiff does not argue otherwise.  Accordingly, judgment is warranted as a matter of law to LVG with respect to Plaintiff's Count One (breach of contract) to the extent the alleged breach was in LVG's November 2021 termination.

Returning to the allegation that the compensation terms of the Agreement were modified, a written contract precluding oral modifications may only be modified by a subsequent oral agreement upon a showing of "clear, precise and convincing evidence, including conduct by the parties that clearly shows the **intent to waive the requirement that the amendments be made in writing**." *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 243–44 (3d Cir. 2005) (citation omitted)(emphasis added). Without this clear and convincing evidence, a party cannot be in breach of an agreement it has not made[1].  See *Vino 100, LLC v. Smoke on the Water, LLC*, 864 F. Supp. 2d 269, 284 (E.D. Pa. 2012) (granting summary judgment where "the record is devoid of any "clear, precise, and convincing" evidence that [the parties] modified the royalty term of the [agreement]").

Here, it is undisputed that the Agreement between LVG and GFIM, as executed on May 1, 2021, contained explicit requirements that any modifications to the Agreement were effective only if reduced to writing.  SUMF ¶ 34.  It is also undisputed that the Agreement provided only for a

---

[1] To succeed on a claim for breach of contract, a party must show "(1) **the existence of a contract,** including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Cipolla v. Inst. for Psychoanalytic Psychotherapies*, 33 F. App'x 617, 621 (3d Cir. 2002) (emphasis added).

monthly payment of $100,000.00 for GFIM's services. It did not provide for bonuses of any kind. The only reference in the signed written Agreement to a payment other than the monthly $100,000.00 amount was a provision that the parties would confer, after three months, regarding the amount of compensation that LVG would pay to GFIM for the remaining term of the Agreement.  SUMF ¶ 32.  And again, should the parties agree to a revised compensation amount at that time, whether higher or lower, that agreement, to be effective, would need to be reduced to writing.  SUMF ¶32.

Plaintiff admits that there is no written modification or amendment signed by both parties. SUMF ¶ 36. Plaintiff asserts that there was an oral promise made by LVG employees Lisa Jackson and Karen Avery to pay a performance bonus over and above the contract.  Compl. at ¶¶ 12-13. This bare conclusory assertion, however, is insufficient to meet the clear and convincing standard required.  Ms. Jackson denies ever making such an oral promise to Mr. Binion, SUMF ¶ 43.  Mr. Binion did not receive an oral promise from Ms. Jackson.  SUMF ¶ 44.  The only support Mr. Binion has to offer in support of his contention is (a) testimony from Karen Avery of an oral promise made by her to Mr. Binion, and (b) LVG's payment to Mr. Binion on June 18, 2021, of $100,000 beyond the agreed-upon monthly compensation.  Regarding Karen Avery[2], the record is clear that she had no authority, actual or apparent, to contract on behalf of LVG. *See* SUMF at ¶46. There is no evidence that Ms. Jackson, managing partner of LVG and signatory to the Agreement, ever referred to Ms. Avery as having such authority. *See Boat People S.O.S., Inc. v. Urb. Affs. Coal*, No. CV 16-5486, 2018 WL 558432, at *7 (E.D. Pa. Jan. 25, 2018) (quoting *D & G Co., Inc. v. First Nat'l Bank of Greencastle,* 764 F.2d 950, 954 (3d Cir. 1985)) ("an agent cannot, simply

---

[2] Ms. Avery is no longer employed by LVG, having been fired by LVG in February 2022 prior to her giving of testimony in this matter, in part because of LVG's discovery that Ms. Avery was using LVG resources inappropriately, and without permission, to assist Mr. Binion following his contract termination.

by his own words, invest himself with apparent authority. Such authority emanates from the actions of the principal and not the agent."); *MDNet, Inc. v. Pharmacia Corp*., 147 F. App'x 239, 244 (3d Cir. 2005) (dismissing breach of contract claim where "the complaint does not allege that an authorized agent of [the company] ever made any statement waiving the requirement of a writing").  Further, Ms. Avery's testimony demonstrates clearly why the parties' Agreement required any modifications to be reduced to writing, and why the law places such a high premium upon enforcing such requirements, as Ms. Avery's testimony and Mr. Binion's testimony regarding the terms of the allegedly promised bonus conflict with the terms that GFIM alleged in the Complaint.  SUMF ⁋ 40 and accompanying footnote.

With respect to the June 18, 2021 payment beyond the Agreement, Ms. Jackson and Mr. Dunn both made clear to Plaintiff that Ms. Avery did not speak for LVG in matters of contracting or compensation, and that this was a one-time payment not based upon any number of samples submitted or accounts opened, but as a flat amount intended to resolve a disagreement between the parties and to preserve a relationship in its early days.  SUMF ⁋51.  That the June payment of $100,000 was for significantly less than the alleged promise of $325,000.00 demonstrates further that LVG's attempt to preserve the relationship was not because the Agreement had been modified on any sort of a going-forward basis.  Plaintiff has not, and cannot, meet its requirement to show by clear and convincing evidence that the parties intended to modify the May 1, 2021 Agreement, and intended to waive the explicit requirements of that Agreement to reduce any modifications, if ever made, to writing.  LVG is entitled to judgment on Count One as a matter of law.

**C.  Plaintiff's Unjust Enrichment Claim Fails Because Any Benefits Conferred Upon LVG Were Required by the Parties' Contract and Were Compensated For Based on the Terms of the Contract.**

In Count Two of the Complaint, GFIM alleges that it conferred a benefit upon LVG for which LVG did not pay compensation.   To prevail on a claim for unjust enrichment, Plaintiff must establish the following three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of  such benefit(s)  by  the defendant; and (3) acceptance and retention of  such benefit under such circumstances that it would  be inequitable for defendant to retain the benefit without payment of value. *Sovereign Bank v. BJ's Wholesale Club, Inc*., 533 F.3d 162, 180 (3d Cir. 2008).  The mere fact that one party benefits from the act of another is on its own insufficient to justify restitution.  *Downey v. First Indem. Ins*., 214 F. Supp. 3d 414, 430 (E.D. Pa. 2016). Rather, a plaintiff must show that a defendant wrongfully obtained or received the benefit. Id.

In the instant case, GFIM fails to identify an alleged benefit conferred on LVG.  Under the terms of the May 1, 2021 Agreement, Plaintiff was to provide various services, including but not limited to:

1.     Sales and Growth
2.     Education and Product Training — Develop and retain the necessary product/services knowledge required to properly train and educate customers on the products and services offered by LVG.
3.     Distribution management services — Assist with and coordinate the day-to-day interactions with various vendors and suppliers who send testing kits and specimens to the lab and/or who consult with patients who desire to have certain tests performed.
4.     Account management — performance reviews of various vendors/service providers; assessing new/additional vendors/new service providers; periodic education
5.     Quality Initiatives

SUMF ¶ 28. Since these services were already required by the written Agreement in exchange for compensation of $100,000.00 per month, they cannot form the basis of an unjust enrichment claim. See *Downey*, 214 F. Supp. 3d at n.14 ("a plaintiff may not maintain a claim for unjust enrichment under a quasi-contract theory of recovery where "the relationship between the parties is founded

upon [a] written agreement[.]").The parties expressly contracted for GFIM to engage in sales and distribution management services and for LVG to pay Plaintiff $100,000.00 monthly for doing so. Because Plaintiff's services to LVG were required by the Agreement as written and executed, GFIM has no unjust enrichment claim, and LVG is entitled to judgment as a matter of law on Count Two.

### D.  LVG's Contract Decisions Regarding GFIM Were Not Racially Motivated. Accordingly, LVG Did Not Violate 42 U.S.C. § 1981

In Count three of its Complaint, GFIM alleges that LVG's decisions regarding (a) the non-payment of a performance bonus pursuant to an alleged oral modification of the May 21, 2021 Agreement; and (b) the termination of that at-will contract prior to the end of the 12-month contract term were made on the basis of race, in violation of 42 U.S.C. § 1981.  That simply is not the case. Indeed, the record evidence demonstrates that with regard to each of these two decisions, GFIM received similar, if not better, treatment when compared with other LVG contractors during that same time period.

In its current form, "§ 1981's prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations." *Ellis v. Budget Maint., Inc.,* 25 F. Supp. 3d 749, 753 (E.D. Pa. 2014) (quoting *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 302 (1994)). Section 1981 contract discrimination claims are subject to the same analysis as employment discrimination claims under Title VII of the Civil Rights Act of 1964. *Dominici v. Reading Hosp./Tower Health*, No. 5:18-CV-04181, 2020 WL 2898658, at *12 (E.D. Pa. June 3, 2020). The Supreme Court has established a burden-shifting framework to analyze Title VII discrimination claims. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). First, the plaintiff has the burden of proving

by a preponderance of the evidence a *prima facie* case of discrimination. *Id*. To establish a *prima facie* case, a plaintiff must demonstrate that (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) members outside the class were treated more favorably or the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. *Harris v. Keystone Cement Co.,* No. 5:19-CV-01965, 2021 WL 672416, at *7 (E.D. Pa. Feb. 22, 2021). Second,

> if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection. ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*McDonnell Douglas Corp.,* 411 U.S. at 802 (citation omitted). The plaintiff bears the ultimate burden of showing a but-for causal connection between his membership in a protected class and the employer's adverse employment decision. *Ortiz v. Cedar Crest Coll.,* No. 5:16-CV-06703, 2017 WL 6422164, at *5 (E.D. Pa. Dec. 18, 2017), *aff'd,* 764 F. App'x 257 (3d Cir. 2019). Absent such a showing, the moving party is entitled to judgment as a matter of law. *Ade v. KidsPeace Corp.,* 698 F. Supp. 2d 501, 512 (E.D. Pa.), *aff'd,* 401 F. App'x 697 (3d Cir. 2010) (granting summary judgment in favor of defendant where plaintiff failed to demonstrate that the defendant's proffered reason for termination was pretextual).

### i.  *Plaintiff Cannot Establish a Prima Facie Case of Discrimination*

Plaintiff's claim fails at step one of the *McDonnell Douglas* analysis because GFIM cannot establish a *prima facie* case of racial discrimination.  While it may be that Plaintiff meets the first three prongs of the *prima facie* test, GFIM cannot meet the fourth prong because it cannot produce evidence showing non-African-American contractors were treated more favorably than it or that

there were circumstances giving rise to an inference of intentional discrimination.   GFIM complains that it was subjected to adverse contract actions that others outside of its protected class (i.e., non-African-American contractors) were not.  First, GFIM argues that LVG's failure to honor an alleged oral modification to the May 1, 2021 Agreement was an adverse contract action, but provides no evidence, and makes no allegation in its Complaint that LVG took a different action with respect to an oral modification when dealing with a non-African-American contractor.  Nor can GFIM provide that evidence, because that never happened.  If we expand GFIM's claim to be LVG's failure to pay a performance bonus, the same shortcoming exists.  GFIM provides no evidence, and makes no allegation in its Complaint, that LVG took a different action by paying performance bonuses to non-African-American contractors.  Nor can GFIM provide that evidence, because that never happened.

As for GFIM's claim that LVG's decision to terminate the May 1, 2021 Agreement before the 12-month period expired comprises a Section 1981 violation, GFIM again provides no evidence, and makes no allegation in its Complaint, that LVG took a different action when dealing with non-African-American contractors.  And again, GFIM cannot provide that evidence, because that's simply not the case.  The record evidence is that LVG regularly exercises its at-will rights of its marketing agreements to end those marketing agreements before the 12-month mark with a large percentage of its contractors without regard to any particular demographic characteristic, let alone race.  That being the case, summary judgment is appropriate.  *See Harris v. Keystone Cement Co.,* No. 5:19-CV-01965, 2021 WL 672416, at *7 (E.D. Pa. Feb. 22, 2021) (granting summary judgment where plaintiff offered "no facts in the record indicating that [the employer] treated any non-African American employees more favorably than [plaintiff]).

GFIM purports to identify a single comparator in support of its Section 1981 allegation. Complaint, ¶¶ 21-22 (a Caucasian contractor being compensated at $160,000 monthly).  This contractor is Spirit Healthcare, Inc., a contractor who had worked for LVG prior to GFIM's May 1, 2021 Agreement, and was re-contracted by LVG on October 1, 2021.  SUMF ¶¶ 11, 23-26. GFIM's attempt to use Spirit as a comparator is misplaced.  Where a plaintiff alleges similarly situated employees were treated more favorably than him or her to support its discrimination claim, courts will only consider those comparators who are "directly comparable in all material aspects." *In re Trib. Media Co*., 902 F.3d 384, 403 (3d Cir. 2018)(finding plaintiff's comparator was not similarly situated where comparator did not share the same tenure and union status as plaintiff); *see Cameron-Satchell v. CDHA Mgmt. LLC*, No. CV 21-576, 2021 WL 4902342, at *13 (E.D. Pa. Oct. 21, 2021) (finding employee who did not share same supervisor or engage in same conduct as plaintiff not a valid comparator).

Plaintiff's contention that Spirit was similarly situated and treated more favorably than GFIM is unconvincing in light of Spirit's robust infrastructure and performance compared to Plaintiff's. Indeed, Spirit is not a valid comparator to GFIM. Unlike Plaintiff, Spirit had a prior history with LVG, wherein it demonstrated it had an adequate support staff and that it rarely failed to ensure that its accounts provided required patient and healthcare provider information in accordance with LVG policies. *See* SUMF at ¶26:

> Q.    So, are those the factors -- are those
>       all the factors that informed Lehigh Valley's
>       decision to reengage with Spirit in 2021?
>
> A.    No. He had the staff behind him, so
>       we knew he had people under him that were
>       administrative assistants that could help him.
>       So, he really wasn't a problem to the lab. It
>       didn't put any extra burden on the lab with --

> he followed the protocols with how to order
> supplies, how to get the medical records, how to
> get the FedEx shipping labels.
> So, it was just a decision we made.

Additionally, GFIM does not allege that Spirit received different treatment from LVG with regard to either of the two adverse contract actions identified by GFIM, specifically LVG's decision to not permit an oral modification of the Agreement regarding performance bonuses and LVG's decision to terminate the Agreement prior to the expiration of 12 months. Instead, GFIM complains that Spirit's monthly compensation exceeded that of GFIM's monthly compensation. A difference in compensation amounts set by contract is not an adverse contract decision; otherwise, there could be never be any differences in negotiated contract amounts, a result surely not intended by Section 1981. Moreover, if that were GFIM's argument, it ignores the fact that LVG entered into seven other marketing agreements in 2021 besides those entered into with GFIM and Spirit. Each of those other agreements set compensation amounts well below GFIM's compensation amount.

Even if Spirit was determined to be a valid comparator, the record evidence shows that GFIM was not treated any less favorably than Spirit, or other contractors, with respect to either performance bonuses or early termination. Spirit did not receive any performance bonuses during its contracts with LVG. SUMF ⁋ 38. Indeed, no contractor received any performance bonuses. *Id.* The only contractor who received any payment over and above the negotiated monthly amount in 2020-2022 was GFIM, with the June 18, 2021 payment of $100,000. Regarding early termination, LVG terminated its October 2021 contract with Spirit prior to the end of the contract term just as it did with GFIM. SUMF ⁋ 11. It was common practice for LVG to terminate its at-will contracts with sales representatives prior to the expiration of the 12-month contract period. *See* SUMF at ⁋⁋ 10-11. Therefore, Plaintiff cannot show that GFIM was treated any less favorably

than non-African-American contractors, and does not make out a prima facie case for discrimination.  *See Peake v. Pennsylvania State Police*, 644 F. App'x 148, 151 (3d Cir. 2016) (upholding summary judgment where plaintiff "had not introduced any similarly situated comparators and could not show a causal link between his membership in a protected class and the adverse employment action"); *Cameron-Satchell v. CDHA Mgmt. LLC*, No. CV 21-576, 2021 WL 4902342, at *13 (E.D. Pa. Oct. 21, 2021) (granting summary judgment where plaintiff "fail[ed] to cite evidence of either a comparator treated more favorably or a causal nexus between her race and her termination)

Given Plaintiff's inability to demonstrate less favorable treatment in the context of contract actions, GFIM argues that certain alleged statements by Ms. Jackson and Mr. Dunn of LVG evince circumstances giving rise to an inference of intentional discrimination.   Specifically, Plaintiff alleges that the following statements were made:

| | Alleged Statement By | Alleged Statement To | Alleged Content of Statement | Date of Alleged Statement | Record Reference |
|---|---|---|---|---|---|
| **Statement A** | Lisa Jackson | Lee Binion | Allegedly stated: "I'm surprised, you speak very well." | July/August 2021 | Binion Tr. at 190:2-6 |
| **Statement B** | Lisa Jackson | Karen Avery | Allegedly referred to Sylvester Williams as a "dumb black guy who shouldn't have a lab" | August 2021 | Avery Tr. at 121:2-8 |
| **Statement C** | Lisa Jackson | Dr. Jasen Chi | Allegedly stated "people of Mr. Binion's color 'didn't make that kind of money' " | September/October 2021 | Compl.at ⁋ 18 |
| **Statement D** | Lisa Jackson | Dr. Jasen Chi | Allegedly referred to Mr. Binion as a both a "stupid black man" and a n-word | Between September 13 and October 7, 2021 | Chi Tr. at 14:18-23 |
| **Statement E** | Robert Dunn | Dr. Jasen Chi | Allegedly referred to Mr. Binion as the n-word | On or about October 9, 2021 | Chi Tr. at 47:15-18 |

| Statement F | Robert Dunn | Jason Bennett | Allegedly stated that "LVG 'needed more people like [Jason Bennett] and less people like' Mr. Binion" | On or about November 4, 2021 | Compl. at ¶ 19  Bennett Affidavit at ¶ 4 |
|---|---|---|---|---|---|

SUMF ¶64.  First, and most significantly, Ms. Jackson and Mr. Dunn each unequivocally deny making any of the above statements attributed to them, or any other racially derogatory remark about Mr. Binion or GFIM.  SUMF ¶¶ 65-66.  GFIM will be completely unable to meet its burden of proving that these statements were ever made by either Ms. Jackson or Mr. Dunn.  Indeed, the evidence in this case supports just the opposite.  As an example, consider statement E which was attributed as made by Mr. Dunn to Dr. Chi on or about October 9, 2021.  GFIM's January 18, 2022, Complaint does not refer at all to any such statement by Mr. Dunn in its listing of alleged derogatory statements.  In Mr. Binion's sworn initial Answers to LVG's Interrogatory No. 6, when asked to identify statements made that GFIM considered of a derogatory nature, there again is no reference to any such statement by Mr. Dunn.  And again, in Mr. Binion's sworn supplemental Answer to LVG's Interrogatory No. 6, there is still no reference to any such statement by Mr. Dunn, notwithstanding that Mr. Binion used that supplemental Answer to include a 8 paragraph description of Dr. Chi's purported interactions with LVG employees.  There is no recording of this statement, there are no third-party witnesses to the statement, and Dr. Chi cannot produce any records from his mobile or landline phone carriers to substantiate that there was even a conversation between himself and Mr. Dunn.  Mr. Dunn has checked his own phone records over the time period involved, and there is absolutely no record of even a phone conversation from Mr. Dunn to Dr. Chi, let alone a phone conversation where Mr. Dunn used the language attributed to him by Dr. Chi.  The conversation, like the other alleged discriminatory statements, is a complete

fabrication, and the allegations made against Ms. Jackson and Mr. Dunn are offensive and irresponsible and hurtful.

Recognizing, however, the current status of the proceeding (i.e., summary judgment), LVG contends that even if the statements occurred as alleged as outlined in the table above, they still fail to satisfy GFIM's burden of making a *prima facie* case under the *McDonnell Douglas* framework for the following reasons:

1. Statements A and F, above, are not the sorts of statements that courts have found to create an inference of discrimination, intentional or otherwise. Neither statement includes any reference to race; additionally, both the speaker and the hearer of Statement F have both testified that there was no intent that the statement be about race when made, nor was there any understanding on the part of the hearer that the statement was about race. *See Wilson v Blockbuster, Inc,,* 571 F. Supp. 2d 641, 652 (E.D. Pa. 2008)(no showing of a prima facie case of discrimination where the alleged derogatory comment was that the African-American plaintiff had an "urban look," with the court reasoning that the comment could just as likely refer to some other aspect of plaintiff's appearance other than race); *Roberts v. Planned Bldg. Servs*., No. CIV. 08-0968, 2009 WL 367542, at *1 (E.D. Pa. Feb. 13, 2009) (finding that employer's single use of the word "animals" when referring to its staff, a majority of whom were African-American, was insufficient to make out *prima facie* case). *See also Cameron-Satchell,* 2021 WL 4902342, at *12 (Plaintiff's "subjective belief race played a role in [his] termination is insufficient to establish an inference of discrimination.").

2. Statement B, above, is not about either GFIM or Mr. Binion, and, even if actually made, has no identifiable connection to the adverse contract actions alleged by GFIM. *Id.*

3. Despite the Complaint alleging otherwise, GFIM has no record evidence that Statement C, above, ever occurred.  Dr. Chi repeatedly testified  that any conversations he had with either Ms. Jackson or Mr. Dunn about GFIM's compensation were that GFIM was paid very well, or too well, or excessively well for the services it was providing .  Dr. Chi did not, and could not, testify that any of the alleged conversations regarding compensation referred to Mr. Binion's race.

4. Statements D and E are similarly untethered from any adverse contract action.  Even assuming that these statements were made, there is no discussion within the statement regarding either LVG's decision to not permit an oral modification to be made to a written contract, or its decision to terminate at will contract prior to the expiration of the contract term.  Even assuming that these statements were made, they were made, at the earliest in mid-September 2021 and at the latest by October 9, 2021.  By mid-September 2021, LVG's decision to not permit an oral modification to its written contract was already two months in the past, and its decision to terminate the at-will contract was still two months (and $200,000) in the future.  Clearly, there can be no connection between the alleged statements and either of the two complained-of contract actions.  *See Ade v. KidsPeace Corp.,* 698 F. Supp. 2d 501, 514 (E.D. Pa.), *aff'd,* 401 F. App'x 697 (3d Cir. 2010) (supervisor's comment was temporally remote and unrelated to his termination); *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1112, (3d Cir.1997) (statement made by decision maker was temporally remote and not directly related to termination process, and therefore insufficient to create inference of discrimination).

Plaintiff cannot show a causal nexus between Mr. Binion's race and LVG's decisions regarding GFIM's termination or the denial of a performance bonus payment.  Accordingly, Plaintiff fails to

establish a *prima facie* case of discrimination and LVG is entitled to summary judgment on Count Three.

     ii. *Even if Plaintiff Could Establish a Prima Facie Case, Its Claim Still Fails Under the McDonald Douglass Framework*

Should this court determine that Plaintiff has made a prima facie case- it has not- Plaintiff's claim still fails because LVG had legitimate non-discriminatory reasons for not paying an alleged performance bonus  and for terminating the Agreement. *Dominici* is instructive. In that case, plaintiff brought a national origin and age discrimination suit after being terminated from her job as a hospital nurse. 2020 WL 2898658, at \*12.  Her employer produced evidence that it had issued warnings to plaintiff for three infractions. *Id*. This Court granted summary judgment in favor of the employer and held that plaintiff's violations of the hospital's policy was a legitimate non-discriminatory reason and plaintiff could not demonstrate pretext. *Id*.; *see also DeCicco v. Mid-Atl. Healthcare, LLC*, 275 F. Supp. 3d 546, 555-56 (E.D. Pa. 2017) (recognizing that "violation of internal company policies may constitute facially legitimate, non-discriminatory reasons for termination"); *Harris v. Keystone Cement Co.,* No. 5:19-CV-01965, 2021 WL 672416, at \*7 (E.D. Pa. Feb. 22, 2021) (granting summary judgment where record showed employer had legitimate business reasons for its actions).

In this case, LVG had legitimate business reasons for not paying the alleged performance bonus to GFIM. *See e.g.* SUMF ¶39. Not only would it have been fiscally irresponsible for LVG to pay a bonus for accounts where reimbursement decisions by payors would not have been made yet, but doing so could potentially have put LVG at risk of violating federal regulations. *Id*. It would have been unreasonable for LVG to put its business at risk for the sake of a single contractor.

LVG also had multiple legitimate business reasons for terminating GFIM's contract. *See* SUMF

at ¶71:

> Q:  Okay. Why did you decide to terminate GFIM?
>
> A:  For reasons he was argumentative with staff. My staff didn't want to work with him. He—the office—the samples that were coming in were not – I felt were not clean samples coming in. We were having trouble getting office records from his accounts. He wasn't bringing in new accounts. And the main reason was just us – we started to receive callbacks on some of his samples.

*See also id.* at 56:
> Q:  I'm sorry. Please finish your answer.
> A:  We were continually having to remind him to order supplies through the portal, how that process worked. There was a continual discussion about appropriate documentation for his supplies. And those conversations took place with Mr. Binion and they weren't necessary with any other rep because every other rep was able to understand and handle those situations and those circumstances.

LVG contractors are expected to follow the company's practices and procedures. Jackson Affidavit

at ¶ 3. Once it became evident to LVG that Plaintiff was unwilling to comply, LVG exercised its

business judgment and decided to terminate the Agreement just as it had done for previous

contractors. Given these facts, the court should apply the same reasoning here as in *Dominici* and

find that LVG had legitimate nondiscriminatory reasons for its contract action decisions.

### iii.  *Plaintiff Cannot Show LVG's Proffered Reasons Were Pretextual*

Plaintiff's claim also fails at step three because LVG's reasons for nonpayment of the

alleged bonus and for termination of the Agreement were not a pretext for discrimination.  To rebut

an employer's proffered legitimate reason and prove pretext, a plaintiff must present evidence that

> (1) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action, or (2) present evidence that casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that

> a factfinder could reasonably conclude that each reason was a
> fabrication.

*Ade,* 698 F. Supp. 2d at 513.  It is insufficient to merely show that the employer's decision was

wrong or mistaken. *Id.* Notably, a plaintiff cannot show pretext where he or she admits to conduct

that violated an employer's policies.  *Dominici*, 2020 WL 2898658, at *12.

Here, GFIM cannot present any evidence showing that discrimination was more

likely than not a motivator for LVG's decisions to not pay the alleged bonus and to terminate the

Agreement. The fact that Plaintiff disagrees with LVG's decisions cannot save its §1981 claim.

Plaintiff will likely rely on alleged discriminatory comments to rebut LVG's proffered reasons but,

as discussed above, Mr. Binion admits to having no independent knowledge of LVG ever using

racially discriminatory remarks and Ms. Jackson and Mr. Dunn both unequivocally deny doing so.

*See* SUMF at ¶¶ 64-66. Plaintiff offers only rumors and inadmissible hearsay to support its

discrimination claim. *See Harris v. Keystone Cement Co.*, No. 5:19-CV-01965, 2021 WL 672416,

at *n.18 (E.D. Pa. Feb. 22, 2021) (refusing to consider plaintiff's testimony that three non-African

Americans were treated more favorably where plaintiff "learned this information through hearsay

statements, which are not admissible and cannot form the basis for factual averments capable of

defeating a motion for summary judgment"). Yet the record shows and Plaintiff does not dispute

that multiple samples sent from GFIM accounts were missing necessary provider and/or patient

documentation needed for LVG to secure payment from its payors. Even without the other reasons

given, this alone is a legitimate business reason to terminate the Agreement. Accordingly, Plaintiff

cannot show pretext and LVG is entitled to summary judgment on Count III.

## V.    <u>Conclusion</u>

For the foregoing reasons, Lehigh Valley Genomics, LLC respectfully requests that the

court grant its Motion for Summary Judgment on all three counts of Plaintiff's Complaint.

Respectfully submitted,

*/s/ Robert J. McCully*
Robert J. McCully, *admitted pro hac vice*
Shareda P. Coleman, Bar No. 325623
Two Commerce Square
2001 Market St, Suite 3000
Philadelphia, PA 19103
215-278-2555
rmccully@shb.com
scoleman@shb.com

Dated:  August 22, 2022                    *Attorneys for Defendant Lehigh Valley
Genomics, LLC*

<u>**CERTIFICATION**</u>

I, Robert J. McCully, do hereby certify that on this date, I caused the foregoing Motion for

Summary Judgment to be electronically filed and available for viewing and downloading from the

Court's ECF system, which will provide electronic notice to all counsel and parties of record.


<u>*/s/ Robert J. McCully*</u>

Robert J. McCully, *admitted pro hac vice*
*Attorney for Defendant,*
*Lehigh Valley Genomics, LLC*

Dated:  August 22, 2022

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**


– – – – – – – – – – – – – – – – – – – – – – – – – – – –

GF INDUSTRIES OF MISSOURI, LLC,      :       Case No.: 5:22-cv-227-JFL

                  Plaintiff,      :

                  v.        :

LEHIGH VALLEY GENOMICS, LLC,      :

                  Defendant.      :

– – – – – – – – – – – – – – – – – – – – – – – – – – – –


## <u>ORDER</u>


      **AND NOW,** this _____ day of _____, 2022, upon consideration of the

Motion for Summary Judgment filed by Defendant Lehigh Valley Genomics, LLC and any responses

thereto, it is hereby **ORDERED** that the Motion is **GRANTED.**


                        **SO ORDERED:**



                        _____

                                J.