IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GF INDUSTRIES OF MISSOURI, LLC, | : | Case No.: 5:22-cv-227-JFL |
| Plaintiff, | : | |
| v. | : | |
| LEHIGH VALLEY GENOMICS, LLC, | : | |
| Defendant. | : | |

## JOINT PRETRIAL MEMORANDUM

### A. NATURE OF ACTION

Plaintiff GF Industries of Missouri, LLC ("GFIM") initiated this action against Lehigh Valley Genomics, LLC ("LVG") for (1) alleged breach of contract and (2) wrongful termination of a contract in violation of 42 U.S.C. §1981. In turn, LVG brings a counterclaim against GFIM for attorney's fees and costs.

This court has jurisdiction over GFIM's 42 U.S.C. §1981 claim pursuant to 28 U.S.C. § 1331.  This court has jurisdiction over GFIM's state law claim pursuant to 28 U.S.C. § 1332 (the case involves parties from different states and the amount in controversy exceeds $75,000), and pursuant to 28 U.S.C. § 1367 (the state law claims arise from the same nucleus of operative facts as does GFIM's federal cause of action so as to form part of the same case or controversy under Article III of the United States Constitution.)

This court has jurisdiction over LVG's counterclaim pursuant to 28 U.S.C.  §1367 (it is so related to plaintiff's claims that it forms a part of the same case and controversy under Article III of the Constitution.)

### B. JOINT STATEMENT OF ISSUES TO BE TRIED

The issues to be tried include liability and damages with respect to GFIM's claims for breach of contract and pursuant to 42 U.S.C. § 1981, and with respect to the parties' respective claims for attorneys' fees pursuant to the parties' contract.

### C. JOINT STATEMENT OF CONTESTED ISSUES OF LAW OR PENDING MOTIONS

None currently.

### D. JOINT STATEMENT OF UNDISPUTED FACTS

1. GFIM is a limited liability company with its principal place of business at 20 Lawrence Drive, St. Louis, Missouri 63141. Lee Binion, an African American male, is the company's sole owner and president.
2. LVG is a clinical laboratory with its principal place of business at 2550 Broadhead Road, Suite 202, Bethlehem, Pennsylvania 18020. Lisa Jackson and Dr. Anil Desphante are the co-owners.
3. LVG offers molecular and genetic testing services to healthcare providers.
4. GFIM and LVG entered into a written Development and Marketing Services Agreement ("Agreement") on May 1, 2021. It is the only written agreement between GFIM and LVG.
5. Lee Binion and Lisa Jackson were the only signatories to the Agreement.
6. The Agreement was for a 12-month term, terminable at will by either party upon 15 days' notice.
7. The Agreement included a list of services that GFIM was to provide in exchange for $100,000.00 per month, with the first three months of the Agreement described as a "startup period." The Agreement stated that if any adjustment were to be made to compensation following the 3-month startup period, it was to be by further written agreement signed by both parties.
8. The Agreement did not provide for bonuses of any kind.
9. The Agreement contained an integration clause. Any amendments were required to be in writing and signed by both parties.
10. No written modifications were ever made to the Agreement.
11. On November 4, 2021, LVG provided a 15-day notice of termination to GFIM.
12. On November 19, 2021, LVG terminated the Agreement.
13. LVG has terminated other similar Development and Marketing Service Agreements prior to the contract end date.
14. LVG has never paid a bonus to any other marketing services contractor.

### E. GFIM'S STATEMENT OF FACTS IN SUPPORT OF ITS CLAIM FOR DAMAGES

Plaintiff GF Industries of Missouri, LLC ("GFIM") entered into a Development and Marketing Services Agreement ("Agreement") with Lehigh Valley Genomics, LLC ("LVG") on May 1, 2021. Pursuant to the Agreement, GFIM provided business development services ("Services") to LVG. The Agreement, at paragraph 4(a), entitled GFIM to $100,000 each month during the first three months of the initial term of the Agreement, which was one year. Paragraph 4(b) provides that the parties would consider modification of this initially stated compensation based upon GFIM's performance.

Subsequent to entering into the Agreement, LVG's Lisa Jackson, LVG's Managing Partnerwhom the Agreement  designated as the person to receive notices on LVG's behalf pursuant to the Agreement, and  Karen Avery, LVG's director of billing, promised GFIM's principal, Lee Binion, that LVG would  pay GFIM additional bonuses if GFIM brought in accounts in excess of 70 each month for  LVG. In total, GFIM earned $478,750 in bonuses, but despite these promises, IVG to date paid GFIM only $100,000 of the bonuses GFIM earned. In addition to failing to pay GFIM the agreed upon bonuses, beginning in or about July, 2021, LVG, by and through Ms. Jackson and Robert Dunn, began sabotaging GFIM's efforts pursuant to the Agreement by refusing to provide reasonable assistance to GFIM,  making false and disparaging statements about Mr. Binion and GFIM to providers, purporting to impose unique requirements on GFIM that LVG did not impose on other sales representatives, and interfering with GFIM"s clients in obtaining test results and supplies.  Ms. Jackson and LVG's in-house counsel, Robert Dunn, also engaged in a pattern of harassment that included, inter alia, verbal abuse toward Mr. Binion. Mr. Dunn also withheld Mr. Binion's final partial bi-monthly base payment until Mr. Binion provided treatment notes, something that the Agreement did not require Mr. Binion to provide.

In addition to breaching the Agreement by failing to pay GFIM the agreed upon bonus, Mr. Dunn and Ms. Jackson made a number of comments that demonstrate that LVG's conduct and ultimate termination of GFIM were all motivated by racial animus. Mr. Binion was the only African American involved with sales for LVG. and less people  like" Mr. Binion. LVG paid Spirit Healthcare, a sales organization that underperformed GFIM, substantially more money than GFIM.

Dr. Jasen Chi, a Little Rock, Arkansas based rheumatologist, testified that that in two separate telephone conversations occurring in the fall of 2021, Ms. Jackson called Mr. Binion a "dumb n-----r" and a "stupid black man" who was making too much money.  Ms. Jackson also called Mr. Binion's friend and business associate Sylvester Williams, who is African American, a "stupid black man."  Dr. Chi also testified that Ms. Jackson made it clear that LVG was about to terminate GFIM.  Dr. Chi testified that Mr. Dunn also called Mr. Binion a "n----r" and also stated that LVG would be terminating GFIM.

Jason Bennett, a Caucasian fellow sales representative working for LVG, testified that when Mr. Dunn called to inform Mr. Bennett, to Mr. Bennett's surprise, that LVG was going to terminate GFIM, that LVG wanted to engage with "more people like [Mr. Bennett] and less like [Mr. Binion]."  Mr. Bennett performed the same role for LVG that Mr. Binion did, and Mr. Binion had vastly superior sales numbers, education and training than Mr. Bennett and the other LVG sales representatives.

Ms. Avery testified that Ms. Jackson, after returning from a trip to Florida to meet with Mr. Williams for the purpose of soliciting business from Mr. Williams, referred to Mr. Williams as a "big dumb black guy" who "shouldn't own a lab." Mr. Binion testified that during a telephone conversation during the latter period of GFIM's work for LVG, Ms. Jackson told Mr. Binion that she was "surprised that [Mr. Bininon] spoke so well."

3

LVG claims that LVG terminated GFIM for a number of non-racially motivated reasons, but these reasons are pretextual, and LVG did not claim to have terminated GFIM for any of these reasons at the time LVG terminated the Agreement. LVG claimed to have terminated GFIM because Mr. Binion was allegedly abusive toward LVG employees, but produced no evidence to support this claim. LVG claimed that GFIM had inadequate support staffing, but GFIM had numerous independent contractors providing administrative support services. GFIM had more staff than any other salesperson or organization providing services to LVG, and LVG never objected to GFIM's staffing levels despite being advised of GFIM's staffing levels.

LVG claims that GFIM did not generate enough new accounts. However, GFIM outperformed all of the other sales representatives providing services to LVG at the time. LVG claims that there were problems with the samples that GFIM procured for LVG, but GFIM's performance in this regard was superior to other representatives providing services to LVG, and LVG clearly had no policy requiring particular documentation to be submitted with samples, as LVG routinely sought reimbursement for tests where LVG had no medical documentation.

Moreover, GFIM could not control whether physicians or practices maintained sufficient medical records to enable LVG to obtain reimbursement for tests, and providing office notes did not guarantee that LVG would receive reimbursements. LVG made the decisions to perform tests in every circumstance, without input from Mr. Binion. On each occasion in which LVG did not receive reimbursements, LVG assumed the risk in submitting reimbursement requests with the documentation, or lack thereof, that LVG had in connection with the tests. LVG also does not contend that GFIM refused to request records when LVG asked GFIM to do so. Moreover, GFIM could not control whether physicians or practices maintained sufficient medical records to enable LVG to obtain reimbursement for tests, and providing office notes did not guarantee that LVG would receive reimbursements. LVG made the decisions to perform tests in every circumstance, without input from Mr. Binion. On each occasion in which LVG did not receive reimbursements, LVG assumed the risk in submitting reimbursement requests with the documentation, or lack thereof, that LVG had in connection with the tests. LVG also does not contend that GFIM refused to request records when LVG asked GFIM to do so. Moreover, GFIM could not control whether physicians or practices maintained sufficient medical records to enable LVG to obtain reimbursement for tests, and providing office notes did not guarantee that LVG would receive reimbursements. LVG made the decisions to perform tests in every circumstance, without input from Mr. Binion. On each occasion in which LVG did not receive reimbursements, LVG assumed the risk in submitting reimbursement requests with the documentation, or lack thereof, that LVG had in connection with the tests. LVG also does not contend that GFIM refused to request records when LVG asked GFIM to do so.

LVG finally claims that it terminated GFIM because of recoupments experienced with respect to reimbursements that LVG obtained, but LVG has produced no evidence that it paid any sum in recoupment for reimbursements associated with GFIM accounts.

LVG terminated the Agreement effective as of November 1, 2021. If LVG had allowed GFIM to perform its services under the Agreement unhindered, GFIM would have earned compensation during the last six months of the Agreement's initial term equal to or greater than

the compensation GFIM earned during the initial six months, and likely into successive renewal terms. LVG's racially motivated termination of GFIM deprived GFIM of the opportunity to earn this income. In so doing, LVG violated GFIM's and Mr. Binion's entitlement to equal rights under the law.

### F. LVG'S COUNTER-STATEMENT OF FACTS IN RESPONSE TO GFIM'S CLAIM FOR DAMAGES

LVG disputes GFIM's statement of facts. The written Agreement is unambiguous and does not provide for any bonuses. According to Paragraph 4(b) of the Agreement, *if* GFIM's compensation were to be adjusted at the conclusion of the 3-month startup period, the parties would enter into a written amendment reflecting that adjustment. Both parties acknowledge that there was no written amendment to the Agreement of any kind. LVG's co-owner, Lisa Jackson, will testify that she never promised to pay any bonus to GFIM. Ms. Jackson was the only LVG representative authorized to enter into contracts or to agree to any other payments to vendors. Any oral, non-documented promise of a bonus made by Karen Avery (a former LVG employee and non-signatory to the Agreement) is unenforceable.

The Agreement provided for termination at the will of either party upon a 15-day notice. LVG denies GFIM's contention that if the Agreement were not terminated, GFIM would have earned compensation during the last 6 months of the Agreement equal to or greater than the compensation earned during the initial six months. GFIM has produced no evidence supporting this speculative claim. LVG has entered similar Agreements with other individuals/entities dating back to before 2021 and has regularly terminated those Agreements prior to the expiration of 12 months. LVG has never paid any performance bonuses to any of these other contractors.

LVG denies that its reasons for termination of its contract with GFIM were pre-textual. First, and foremost, both parties had the contractual right to end the Agreement at will, without reason. Ms. Jackson and Mr. Dunn will both testify that LVG had concerns regarding GFIM's ability to fulfill its contract obligations based on questions about interactions with LVG employees, GFIM's failure to use LVG's preferred methods to communicate regarding test samples and ordering of supplies, GFIM's lack of administrative support leading to non-reimbursement by public and private insurers for lab testing, and other non-discriminatory factors causing LVG to decide it was not receiving from GFIM the value for which LVG was paying.

LVG denies that its decision to terminate the Agreement was racially motivated, and both Lisa Jackson and Robert Dunn will testify that they never used the "n word" or any other racially derogatory term in referring to GFIM or Mr. Binion. LVG denies making any false, disparaging or racist remarks about GFIM or Mr. Binion.

Respecting LVG's counter-claim for legal fees based on contract, GFIM and LVG executed a written and binding contract, entitled Development and Marketing Services Agreement ("Agreement"), on May 1, 2021. Pursuant to paragraph 14 of the Agreement, LVG is entitled to recover its legal expenses including reasonable attorney fees and costs, should it prevail in this action.

### G. GFIM'S MONETARY DAMAGES CLAIMED

GFIM claims damages of $378,750 in connection with its claim for breach of contract, representing the unpaid portion of the agreed upon bonus.  GFIM claims damages of no less than $1,028,750 in connection with GFIM's 42 U.S.C. § 1981 claim, representing the base compensation that GFIM would have received during the remainder of the initial contract term, plus the same bonus that GFIM earned prior to LVG's termination of GFIM.  Plaintiff also seeks punitive damages with respect to 42 U.S.C. § 1981, as well as GFIM's attorneys' fees.

### H. LVG'S MONETARY DAMAGES CLAIMED

Pursuant to paragraph 14 of the Agreement, which exclusively controls the obligations owed by and to each party, LVG is entitled to recover its legal expenses including attorney fees and costs, should it prevail in this action. LVG anticipates that any final claim/proof of claim for legal fees and costs will be submitted and adjudicated post-judgment.

### I. PLAINTIFF'S WITNESS LIST AND SUMMARY OF TESTIMONY

1. Lee Binion, 20 Lawrence Drive, St. Louis, MO 63141.  Mr. Binion will testify about his initial contract negotiations and subsequent negotiations regarding a bonus, about his interactions with Ms. Avery, Ms. Jackson and  Mr. Dunn, about GFIM's performance of its obligations under the Agreement, LVG's interference with and disruption of GFIM"s performance, as well as LVG's abusive conduct toward Mr. Binion.

2. Karen Avery, 3703 Pin Oak Circle, Missouri City, TX 77459. Ms. Avery will testify that LVG authorized her to negotiate the terms of the Agreement with GFIM, and that she negotiated those terms with GFIM.  She will testify that with LVG's authorization, she reached an agreement on LVG's behalf with GFIM on an additional bonus structure.  She will testify as to the nature the contractual performance of GFIM and other LVG sales representatives rendered to LVG, LVG's lack of a policy requiring sales representatives to provide office notes with test samples, and LVG's procedures relating to test samples.  She will testify as to LVG's inability to understand commercial payor billing, interference with GFIM's efforts to service GFIM's physicians.  She will testify that as of April, 2022, when LVG terminated her, LVG had not experienced any recoupments relating to GFIM accounts.

3. Jason Bennett (by deposition designation), 1308 President Street Palatka, FL 32177. Mr. Bennett testified as to his interactions with Mr. Binion and Mr. Dunn, and that Mr. Dunn told Mr. Bennett that LVG would be terminating GFIM because LVG wanted more people like Mr. Bennett and less like Lee. He will also testify that LVG had no policy requiring the submission of office notes with test samples and that he had no administrative support and that LVG didn't require him to demonstrate that he had such support.  He will testify that he had only one client as a LVG sales representative.

4. Dr. Jasen Chi (by deposition designation), 6 Shackleford Rd Little Rock, AR 72211. Dr. Chi testified as to statements that Ms. Jackson and Mr. Dunn made to them including racially derogatory language toward Mr. Binion and telling Dr. Chi that notwithstanding an agreement

LVG and GFIM regarding a bonus, LVG would not be paying GFIM that bonus because GFIM was making too much money.

  5. Dr. Peggy Taylor (by deposition designation), 12575 Hibler Woods Drive, St. Louis, MO, 63131. Dr. Taylor testified as to the actions LVG took with respect to requiring her to obtain test results and supplies through an online portal and the disruptions this caused to her medical practice.

  6. Dr. Russel Branum (by deposition designation), 1501 S. Waldron Road, Fort Smith, AR, 72903. Dr. Branum testified as to his interactions with Mr. Binion and LVG and Dr. Branum's dissatisfaction regarding those interactions that led to Dr. Branum choosing to cease doing business with LVG.

  7. Sylvester Williams (by deposition designation), 3466 Bridgeland Dr, Bridgeton, MO 63044.  Mr. Williams testified as to his interactions with Ms. Jackson, including but not limited to the meeting with respect to which Ms. Avery testified that Ms. Jackson referred to Mr. Williams as a big dumb black guy who shouldn't have a lab, and his dissatisfaction with those interactions.

  8. Charles Harris (by deposition designation), 130 Maple Avenue, Suite 2A, Red Bank, NJ 07701. Mr. Harris testified that Ms. Jackson described the $100,000 payment that GFIM made to LVG in June, 2021 as a bonus pending a new agreement.

  9. Robert Dunn (by deposition designation), 12400 W. Highway 71, Suite 350-244, Austin, TX 78738.  Mr. Dunn testified as to his interactions with Mr. Binion and as to LVG's purported policies with respect to determining whether to perform tests with respect to samples, and as to LVG's decision to terminate GFIM.

  10. Lisa Jackson (by deposition designation), 2550 Brodhead Rd Suite 202, Bethlehem, PA 18020. Ms. Jackson testified as to her interactions with Mr. Binion, Ms. Avery and other LVG sales representatives, as to LVG's policies with respect to deciding whether to perform tests on samples submitted by sales representatives, and LVG's decision to terminate GFIM.

**J. DEFENDANT'S WITNESS LIST AND SUMMARY OF TESTIMONY**

  1.  Lisa Jackson – (Liability & Damages Witness)
     168 Madison Court
     Holland, PA 18966
     Live testimony

  Ms. Jackson will testify about the May 1, 2021, Agreement between the parties, the parties' interactions during and after the period the Agreement was in effect, and the parties' respective performances pursuant to the Agreement. Ms. Jackson will further testify about her interactions with Dr. Jasen Chi and Mr. Sylvester Williams.

    2.   Robert Dunn, Esquire – (Liability & Damages Witness)
         12200 Lake Stone Drive
         Austin, TX 78738
         Live testimony

Mr. Dunn will testify about the May 1, 2021, Agreement between the parties, the parties' interactions during and after the period the Agreement was in effect, and the parties' respective performances pursuant to the Agreement. Mr. Dunn will also testify about his interactions with Dr. Jasen Chi.

### K. DEPOSITION DESIGNATIONS

The parties have previously exchanged deposition designations and counter-designations. The parties intend to present any objections to offered testimony at time of trial.

### L. EXHIBITS

A list of Joint Exhibits and lists of each party's separate Exhibits List are attached. Additionally, each party reserves the right to offer into evidence any exhibit listed by the other party, as well as the right to use additional exhibits for impeachment or rebuttal purposes.

### M. EXPLANATION OF HANDLING OF OBJECTIONS TO EXHIBITS AND DEPOSITION DESIGNATIONS

Pursuant to this Court's Policies and Procedures, the parties intend to offer exhibits into evidence through witness testimony. That being the case, the parties propose that objections to exhibits and/or deposition testimony be made at the time either the exhibits or the designated deposition testimony is offered into evidence.

### N. PROPOSED QUESTIONS FOR VOIR DIRE

Not applicable for this bench trial.

### O. EXPECTED LENGTH OF TRIAL

The parties estimate the trial to last 3-4 days.

### P. TIME

The parties do not believe that it is necessary that the trial should be timed.

### Q. ANY OTHER PERTINENT MATTER

Defendant calls the Court's attention to Plaintiff's Trial Exhibits 77, 93, and 116. Each of these exhibits are documents that are improperly in the possession of Plaintiff and/or his counsel. Defendant understands that Plaintiff and/or his counsel obtained each of these exhibits from a

former employee and/or former contractor of Defendant, in violation of contracts with Defendant. The attempted use of these exhibits at trial would contravene Rule 4.4 of the Pennsylvania Rules of Professional Conduct, as they are each instances of evidence obtained in violation of LVG's legal rights. LVG will object to their introduction at trial on these grounds, in addition to any other evidentiary grounds available, as the appropriate remedy for the inappropriate obtaining of these documents. GFIM disputes LVG's contentions in this regard.

**Dated**: March 9, 2023

                Respectfully submitted,

                _/s/ Francis X. Taney_____
                Francis X. Taney
                PA Atty I.D. No 76590
                Taney Legal LLC
                1933 Prospect Ridge Blvd
                Haddon Heights, NJ 08035
                215-814-8736
                856-494-1367
                Frank.taney@taneylegal.com

                *Attorney for Plaintiff GF Industries of Missouri, LLC*

                */s/ Shareda P. Coleman*_____
                Robert J. McCully, *admitted pro hac vice*
                Shareda P. Coleman, Bar No. 325623
                Two Commerce Square
                2001 Market St, Suite 3000
                Philadelphia, PA 19103
                215-278-2555
                rmccully@shb.com
                scoleman@shb.com

                *Attorneys for Defendant Lehigh Valley Genomics, LLC*